UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MICHAEL A. DeSTEFANO,                          **MEMORANDUM & ORDER**

               Plaintiff,                   17-CV-2250 (DRH) (ARL)

       -against-

THE INCORPORATED VILLAGE OF MINEOLA;
THE BOARD OF TRUSTEES OF THE INCORPORATED
VILLAGE OF MINEOLA, comprised of Mayor Scott P.
Strauss, Deputy Mayor and Trustee Paul A. Pereira, Trustee
Paul S. Cusato, Trustee George R. Durham, and Trustee
Dennis J. Walsh; THE FIRE DEPARTMENT OF THE
INCORPORATED VILLAGE OF MINEOLA; THE FIRE
COUNCIL OF THE FIRE DEPARTMENT OF THE
INCORPORATED VILLAGE OF MINEOLA; JEFFREY
M. CLARK, individually and as the former Chief of the Fire
Department of the Incorporated Village of Mineola; BRIAN
SANTOSUS, individually and as the former 2nd Assistant
Chief of the Fire Department of the Incorporated Village of
Mineola, and LOUIS SANTOSUS, individually and as the
former Chief and Warden of the Fire Department of the
Incorporated Village of Mineola.

              Defendants.
------------------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**
**Sahn Ward Coschignano, PLLC**
333 Earle Ovington Boulevard, Suite 601
Uniondale, New York 11553
By:    Jon A. Ward. Esq.
        Andrew M. Roth, Esq.
        Joseph R. Bjarnson, Esq.

**For Defendant:**
**Sokoloff Stern LLP**
179 Westbury Avenue
Carle Place, New York, 11514
By:    Adam I. Kleinberg, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Michael A. DeStefano ("Plaintiff" or "DeStefano") commenced this action pursuant to 42 U.S.C. § 1983 alleging that defendants the Incorporated Village of Mineola ("Mineola"), the Board of Trustees of the Incorporated Village Of Mineola ("Board" or "Trustees"), the Fire Department of Mineola (("Fire Department" or "Department"), the Fire Council of the Fire Department (the "Council" or "Fire Council"), Jeffrey M. Clark ("Clark"), Brian Santosus ("B. Santosus"), and Louis Santosus ("L. Santosus") (collectively "Defendants"),violated his rights to procedural and substantive due process. Presently before the Court is Defendants' motion to dismiss. For the reasons set forth below, the motion is granted.

## BACKGROUND

The following factual allegations are taken from the Complaint ("Compl.") and presumed true for purposes of this motion.

## I.     The Individual Parties

Plaintiff is a former member of the Fire Department; he served in Company # 3 and has held various positions within the Department, including Chief from 2001 to 2003. (Compl ¶¶ 41, 43, 46.) Clark is the current Chief of the Fire Department and has been a member of Company # 2 since approximately 1997. (*Id.* ¶ 53.) B. Santosus and his father L. Santosus are both members of the Fire Department and former Chiefs. (*Id.* ¶¶ 7, 8, 99.) B. Santosus was Chief in February 2014 when reports were made of misconduct by plaintiff. (*Id.* ¶¶ 99, 104.) As a result of various interactions with Plaintiff, Clark and B. Santosus each developed a "significant animus" against him. (*Id.* ¶¶53-67.)

## II.     The Fire Department and Discipline Generally

The governing body of the Fire Department is the Fire Council. (*Id.* ¶ 26.) The Fire Council is comprised of the Chief Engineer, Assistant Engineers, and the Wardens of the Fire Department's different companies. (*Id.* ¶ 26.) The Fire Council is empowered to oversee disciplinary action against volunteer firefighters. *Id.* ( ¶ 32.) New York General Municipal Law § 209-l governs the termination of volunteer firefighters for misconduct. Under the statute, termination requires "a hearing made upon due notice and upon stated charges." (Compl. ¶ 32; N.Y. Gen. Mun. Law § 209-l.)[1] Disciplinary action imposed by the Fire Council is subject to the approval of the Board of Trustees of Mineola. (Compl. ¶ 35.)

## III.     The 2012 Charges Against Plaintiff and the Proceedings Related Thereto

In 2012, at which time Plaintiff was a member of the Fire Council, Plaintiff's son, also a member of the Department, brought charges against another firefighter. The attorney for the Department issued an advisory memo stating that it would be a clear conflict of interest for Plaintiff to participate in the proceeding as it involved his son and that the recusal should apply to all stages of the proceeding, i.e., the hearing, deliberations, and determination. The then fire chief, Joseph Pratt, accepted the attorney's recommendation and ordered Plaintiff to leave the hearing room when the charges were before the Fire Council. Chief Pratt later brought formal disciplinary charges against Plaintiff for refusing to leave and disobeying a direct order. (Compl. 68-74.)

---

[1] It is alleged in the complaint that General Municipal Law 209-1 governs. The Court notes, however, that "the hearing guarantee contemplated by ¶ 209-1(3) does not apply when charges are brought pursuant to a fire company's by-laws." *Ratajack b. Brewster Fire Dept. Inc.*, 178 F. Supp.3d 118, 141-42 (S.D.N.Y. 2016) (citing, inter alia, *Armstrong v. Centerville Fire Co*, 83 N.Y.2d 937 (1994) (observing that the "[p]etitioner was not statutorily entitled to a hearing before being expelled for having violated respondent's bylaws" and that "[t]he controlling statute (General Municipal Law § 209–l) only grants volunteer officers and volunteer members of fire departments the right to a hearing (upon written notice of charges) before being removed on the ground of incompetence or misconduct").

The charges against Plaintiff were heard by the Fire Council; Clark, B. Santosus, and L, Santosus were among the members of the Fire Council. The Fire Council found Plaintiff guilty of misconduct, banned him from holding office in the Department for three years and suspended him from the Department for five months. The Fire Counsel also warned him that any future findings of guilt would result in automatic dismissal, thus "predetermining the penalty to be imposed" should he found guilty of any charge in the future. (Comp. ¶75.)

Plaintiff appealed the determination to Mineola's Trustees, who appointed Gerald Loughran ("Loughran") as an independent hearing officer to preside over the appeal and conduct a de novo evidentiary hearing on the charges. At the hearing, Clark testified against Plaintiff and admitted that he was the person who was concerned that plaintiff had a conflict of interest and reached out for the legal opinion. Loughran issued his findings and recommendations to the Trustees in a report dated April 5, 2013. Among other things, he criticized Clark and L, Santosus for participating in proceedings as member of the Fire Council where there was an appearance of a conflict. Nonetheless, he recommended affirmance of the Fire Council's determination that Plaintiff was insubordinate in failing to follow an order as well as the penalty of suspension. He recommended, however, modification of the ban on holding office from three years to the length of his suspension and that the warning that future misconduct would result in automatic dismissal be stricken as inappropriate. The Board of Trustees thereafter affirmed Loughran's findings and recommendations. (Compl. ¶¶ 76-81.)

## IV.    The 2014 Charges Against Plaintiff and the Proceedings Related Thereto

### A.    The Charges

On March 20, 2014, the Fire Department issued disciplinary charges to Plaintiff concerning two alleged incidents that occurred on February 25, 2014 and February 26, 2014.

Clark, as Chief, issued the charges; B. Santosus assisted Clark in the preparation and drafting of the charges. Plaintiff was charged with violating three sections of the Fire Department's constitution and bylaws. The first charged section provides that officers shall not use "obscene," "disrespectful or improper language" and "shall be respectful and gentlemanly to superiors, equals and citizens and courteous to subordinates." The other two charged sections prohibit a member from handling equipment in a manner considered "detrimental to the good of the department or contrary to good training or safety procedures," and conducting themselves "in a manner prejudicial to the order, discipline or good reputation of the department." A narrative was submitted in support of and attached to the charges. (Compl. ¶¶ 82-90.)

The narrative described the two incidents as follows: (1) On February 25, 2014, Plaintiff was returning to the fire station from a call; he was driving Engine 167. As he was attempting to make a left turn from Roslyn Road onto Clinton Avenue, a tractor trailer was attempting to turn from Clinton Avenue onto Roslyn Road. Plaintiff made the turn, placing the fire engine in a situation where it was unable to proceed. A Nassau County crossing guard, who was on duty at that corner, had to leave her post to move her vehicle to make room for Plaintiff to pass. Plaintiff then pulled Engine 167 into the middle of Clinton Avenue, exited the truck and in an "intimidating, boisterous, threatening manner approached the crossing guard and began insulting, demeaning finger pointing, arm waving, intimidating rant berating the crossing guard." As a result, the crossing guard felt threatened and upset by the encounter. She documented the incident in her official log book and followed up with a letter of complaint to the department. (2) On February 26, 2014 Plaintiff was returning from another call for which he was driving Engine 167, driving in the eastbound lane on Hillside Avenue. The right lane narrowed due to parked cars encroaching into the lane. A woman motorist passed Engine 167 on the left causing Plaintiff

to stop abruptly. The woman continued a few feet and then stopped for a red light. Plaintiff exited the fire engine in the middle of Hillside Avenue and approached the woman in a deliberate, agitated manner. The woman placed a call to the Chief's office and filed a verbal complaint that she felt threatened by Plaintiff as he began to verbally abuse her and waive his arms and point his finger in a threatening manner. (Compl. ¶ 90.)

**B.    The Proceedings Before the Fire Council**

Plaintiff appeared before the Fire Council on April 16, 2014 to answer the charges. The Fire Council consisted of the following nine members with each member's weighted vote indicated in parentheses: Clark (1.0); First Assist. Chief Pratt (.75); Second Assist. Chief B. Santosus (.75); Warden L. Santosus (.75); Warden Jack Fernandes (.75); Warden Nicholas Martone, Jr. (.75); Warden Mark Danielson (1.0); Warden George Rowe (1.5); and Warden Scott Holliday (1.5). Except for Fernandes, Martone, Danielson and Holliday, the other member of the 2014 Fire Council were also member of the Fire Council that heard and determined the 2012 charges against Plaintiff. Prior to the hearing Clark did not inquire of counsel whether it was a conflict of interest for him to sit on the Fire Council. (Compl. 92-95.)

After reading the charges, Clark "proceeded to prosecute the charges against plaintiff by reading several investigative reports and documents concerning the alleged incidents into the record, which reports and documents Plaintiff heard and saw for the very first time at the hearing." Those documents included two reports prepared by Clark and one prepared by B. Santosus and two emails, including one "purportedly sent" by the crossing guard. No live witnesses were presented in support of the charges.  "The only individual who was actually

present during both of these alleged incidents and offered non-hearsay statements before the Fire Council was Plaintiff." (Compl. ¶¶ 96-144.)[2]

Plaintiff requested that "Clark, B. Santosus, L. Santosus, Pratt and Danielson, among others, recuse themselves from deliberating and voting on the charges because he did not believe he could receive a fair hearing without their recusal." His request was ignored.[3] He also objected that "his request for copies of all the related charging documents" prior to the hearing was not granted and he was not given full disclosure of the evidence against him so that he could properly prepare for the hearing. Plaintiff testified that on February 25 he did briefly exit the fire truck but did not park it in the middle of the street. Nor did he engage in any intimidating, boisterous or threatening behavior towards the crossing guard; he got out of his truck to ask the crossing guard why she was parked illegally and she never had to leave her post because she was in her car during the entire encounter. As to the February 26 incident, he testified that the motorist cut him off in icy conditions at which time she was screaming. Concerned for her safety, he got out of the fire truck, speaking to the motorist in a monotone voice simply trying to calm her down. No evidence concerning either the proper safe operation of fire trucks, or that Plaintiff's operation of the fire truck on the dates in question was a deviation from any protocol, policy or best practices of the fire department, was presented to the Fire Council. (Compl. ¶¶ 144-164.)

On or about April 18, 2014 Plaintiff was served by mail with a letter from Clark informing him that he was found guilty of all charges with an amendment to charge one striking

---

[2]  According to the complaint, the reports and emails contain "hearsay and double hearsay." Furthermore, Plaintiff points out that according to the reports the firefighters on Engine 167 who were interviewed could not hear what Plaintiff was saying and not all of the firefighters present at the alleged incidents were interviewed.
[3]  According to the complaint, in order to terminate a member of the Fire Department, two-thirds of the Fire Council must vote in favor of such termination. (Compl. ¶165.)

the language that Plaintiff had used obscene, immoral, disrespectful or improper language. The letter further stated he was found guilty on two charges by all nine votes, guilty on the remaining charge by a vote of 8 to1 and the vote in favor of termination was 6 to 3.

### C.    Plaintiff's Appeal to Mineola's Trustees and His First Article 78 Proceeding

By letter dated June 17, 2014, and delivered the following day, Plaintiff requested the Trustees to review the determination of the Fire Council to determine if he was given due process and a fair hearing, although he was "not looking for a retrial" because "that would be double jeopardy." (Compl. ¶¶179-182.) He then filed an Article 78 proceeding on August 14, 2014, having received no response from the Trustees.

By letter dated September 3, 2014, the Trustees advised Plaintiff that it had appointed Loughran as hearing officer "to review the appeal, to conduct a hearing, to make findings and to make recommendations to the Board as to whether the charges were properly sustained and as to whether the penalty imposed was reasonable." In January 2015, while the hearing before Loughran was ongoing, a motion to dismiss the Article 78 proceeding was made, which motion was granted on the grounds that the proceeding was premature for failure to exhaust administrative remedies. (Compl. ¶¶ 184-186; 231-233.)

### D.    The Hearing Before Loughran and His Report

Loughran held de novo evidentiary hearings on the charges and the Fire Council's determinations on the following five days: October 30, 2014, November 19, 2014, December 16, 2014, February 24, 2015, and March 10, 2015.  At the outset Plaintiff's counsel objected to a trial de novo on the grounds there was no basis in New York law or the constitution and by-laws of the Fire Department for such a procedure. During the course of the proceeding, the Fire Council called five witnesses: Clark, B. Santosus, Warden Rowe, Warden Danielson and

Firefighter Ferreira; each of whom was subject to cross-examination by Plaintiff's counsel. In his defense Plaintiff called four witnesses: Firefighters Stolarik and Marei, Ex-Captain Symington and Warden Fernandes. (Compl. ¶¶187-230.) The record was closed on March 10, 2015 and each side filed written briefs on June 26, 2015. (Ex. 13 to Ward Declar. at p. 2.)

Loughran issued his written "Findings and Recommended Decision" on August 31, 2015. He determined that there was sufficient evidence in the record before him to support the Fire Council's finding of guilt and its decision to discharge Plaintiff from the Fire Department.[4] (Compl. ¶¶ 234-235.)

### E.    The Trustees' Determination

At its September 9, 2015, the Trustees approved a resolution which affirmed Loughran's Findings and Recommended Decision. (Compl. ¶ 256.)

### F.    The Second Article 78 Proceeding

On January 7, 2016, Plaintiff filed a second Article 78 proceeding in the Supreme Court, Nassau County, both challenging the Fire Council's April 16, 2015 determination and seeking annulment of the Trustees' September 9, 2015 resolution. With respect to the Fire Council proceeding, the petition alleged that the Fire Council was not fair and impartial due to Clark's and B. Santosus participation as council members as well as having investigated, prepared reports on the incident, drafted and prosecuted the charges and predetermined Plaintiff's guilt prior to the hearing. The petition further asserted that the determination was not based on substantial evidence and the penalty was an abuse of discretion and shocking to the conscience. With respect to the Trustees' resolution, it alleged that (1) the Trustees lacked authority to review the Fire Council's determination; (2) the *de novo* hearing had no basis in law; (3) the affirmance

---

[4]  It is alleged that the Report and Recommendation contained "contrary and therefore irrational findings." (Compl. ¶¶ 237-255.)

of the hearing officer's report was in violation of lawful procedure because the Fire Council was not fair and impartial; (4) the resolution "was arbitrary and capricious because it was based on the irrational report and recommendation of the hearing officer that was, in turn, based on evidence that was not before the Fire Council; (5) the resolution was not based on substantial evidence; and (6) the penalty of discharge was an abuse of discretion and shocking to the conscience. (Compl. ¶¶257-58.)

By Order dated May 2, 2016, the Nassau County Supreme Court dismissed the second Article Proceeding. Plaintiff appealed that Order to the Appellate Division, Second Department; which appeal was still pending at the time the instant action was commenced. (Compl. 259-60.)[5]

## DISCUSSION

### I. Legal Standard for a Motion to Dismiss

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at

---

[5] The Court has not been provided with any update as to the status of that appeal.

679.  A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.  *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss.  *Iqbal,* 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007).  Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the

complaint"). A document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in complaint or on which plaintiff relied in drafting complaint). Under this standard, the exhibits submitted by Plaintiff (DE 24) are properly considered on this motion.

## II.    The Parties' Contentions

On this motion Defendants do not challenge that Plaintiff had pleaded a property right that has been deprived; rather they challenge the claim that the deprivation as a result of the 2014 charges was without due process. (Defs.' Mem. at 12 n.2.) Defendants maintain that procedural due process was satisfied because Plaintiff was provide with notice and a limited opportunity to be heard prior to termination and an adversarial hearing was provided afterward. They further argue that a neutral adjudicator is not a necessary component of the pre-termination hearing as there was an adversarial hearing post-termination at which the legality of the dismissal was challenged and because the availability of an Article 78 proceeding constitutes an adequate post-deprivation hearing for purposes of due process. Finally citing to the process that was provided, including the Villages' appointment of an independent hearing officer to preside over the appeal, Defendants argue that appropriate due process was provided. Turning to the substantive due process claim, they argue it should be dismissed because "the few factual allegations that Plaintiff provides fall far short of the conscious shocking behavior" required to support a substantive due process claim. (*Id.* at 17.) Additionally, they maintain dismissal is appropriate

because the "substantive due process claim is subsumed by [the] procedural due process claim." (*Id*. at 18.)

In response, Plaintiff argues that he has alleged sufficient facts to support his claim that he was not provided with sufficient due process either pre-deprivation or post-deprivation. With respect to the pre-deprivation, he argues that he was denied due process because the Fire Council that heard and adjudicated the charges against him was biased. (Pl.'s Opp. Mem. at 3-10.) Turning to the post-deprivation process, he argues first that because the deprivation was pursuant to established state procedure and therefore the three part test under *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)) is applicable. He asserts that under *Mathews* the procedure were deficient because the proceeding before the Board of Trustees hearing officer were ultra vires and unauthorized, with no governing rules of procedure and were neither prompt nor speedy. Further, he asserts that an Article 78 proceeding was not a constitutionally sufficient post-deprivation procedure available to him. (*Id*. at 10-19.) Plaintiff does not address the sufficiency of his substantive due process claim.

## III. Procedural Due Process

The Fourteenth Amendment provides: "No state shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amd. XIV. "In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)). Ordinarily, due process "requires that a state or local government afford persons 'some kind of hearing' prior to depriving them of a significant liberty or property interest." *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001) When a public employee

is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Id.*

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC")*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)). Where the claim is based on a random, unauthorized act, "the 'due process' required by the fourteenth amendment is satisfied by the availability at the state level of an adequate post-deprivation hearing." *Kraebel v. New York City Dep't of Hons. Pres. & Dev.*, 959 F.2d 395,404 (2d Cir. 1992). In New York, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy. . ." *HANAC*, 101 F.3d at 881. Article 78 proceedings are "an amalgam of the common law writs of certiori to review, mandamus, and prohibition," and through it, "constitutional issues can be decided." *Id.* Where a plaintiff alleges he was deprived of a protected interest due to a random, unauthorized act by a state employee, that claim must be pursued through an Article 78 proceeding before resorting to federal court. *See id.*; *see also Nenninger v. Vill. of Port Jefferson*, 509 F. App'x 36, 39 n. 2 (2d Cir. 2013).

In contrast, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *HANAC*, 101 F.3d at 880; *see also Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990) ("[T]he existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of

established state procedures."). "[W]here the deprivation is systemic, litigants have a well-established right to pursue their claims in federal court without resorting to state judicial remedies," *Van Oss v. New York*, 783 F. Supp. 2d 681, 695 (S.D.N.Y. 2011), and "[a]though plaintiffs could bring their individual claims in state court under Article 78, they are not required to do so." *Id.*; *see also Corbley v. Cty. of Suffolk*, 45 F. Supp. 3d 276, 281-82 (E.D.N.Y. 2014) (plaintiff not required to pursue an article 78 proceeding as the alleged procedural due process violations are systemic as opposed to random); *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014) ("[B]ecause the Plaintiff here . . . alleges that the Defendant's procedural due process violations are systematic as opposed to random, the Court finds that the Plaintiff was not required to first initiate an Article 78 proceeding before commencing this action.").

In this case Plaintiff claims with respect to the actions of the Trustees in appointing a hearing officer the deprivation occurred pursuant to established procedure, pointing to their earlier appointment of a hearing officer with respect to the 2012 charges. It seems to this Court, however, that two instances do not an "established procedure" make and that viewing the Trustees' actions as pursuant to established procedure is contrary to the specific allegation that conducting a *de novo* hearing has no basis in law or in the constitution or by-laws of the Fire Department. Nonetheless, the Court will presume for purposes of this motion that such conduct was not random. With respect to the conduct of the Fire Department, Fire Council and the individual defendants who participated in the Fire Council proceedings, the Court is unable to discern what position Plaintiff takes. However, for purposes of this motion, the Court will assume that the deprivation occurred pursuant to established procedure.

**V.     Plaintiff Has Not Stated a Plausible Procedural Due Process Claim**

Defendant's argument for dismissal of the procedural due process claim relies in large part on the Second Circuit's decision in *Locurto*. The relevant question in that case was whether the failure to provide a neutral adjudicator at pre-termination hearings for city police officers and fireman violated procedural due process. The Circuit held that due process is satisfied so long as the government provides a neutral adjudicator at the post termination hearing for a tenured public employee and that the availability of an Article 78 proceeding constitutes a wholly adequate post-deprivation hearing for due process purposes. As the *Locurto* Court stated:

> An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue. Petitioners proceeding under Article 78 may raise claims that the agency adjudicator was biased and prejudged the outcome, and that the determination was slanted by the adjudicator's refusal to recuse herself, or that *ex parte* communications with other officials may have infected the adjudicator's ruling.

264 F. 3d at 174-75 (internal citations omitted).

In response, Plaintiff, citing *Ward v. Monroeville*, 509 U.S. 57 (1973) and *Concrete Pipe & Prods. of Cal., Inc. v. Const. Laborers Pension Trust,* 508 U.S. 602 (1993), argues that since the Fire Council adjudicated the charges against Plaintiff "*in the first instance,*" he was entitled to a neutral arbitrator and "the availability of post-deprivation procedures, whether they be in the form of an unauthorized trial *de novo* before the Board of Trustees or a judicial review of the Fire Council's determination under Article 78 of the CPLR, cannot cure the failure to provide Plaintiff with an impartial Fire Council in the first instance." (Pl.'s Opp. Mem. at 4-7.)

Plaintiff's argument is unavailing for a number of reasons. As the court in *Wolkenstein v. Reville*, 694 F.2d 35 (1982) stated in discussing *Ward* and other Supreme Court authority regarding the neutrality requirement: "Whether a particular decision making procedure is

constitutionally defective for want of impartiality will depend on many factors, among which are the character of the decision being made, the nature of the individual and governmental interests at stake, and the feasibility of alternative procedures." *Id*. at 42 (internal citations omitted).

More importantly, Plaintiff's argument misperceives the nature of the issue. "[W]hen § 1983 claims allege procedural due process violations, we nonetheless evaluate whether state remedies exist because that inquiry goes to whether a constitutional violation has occurred at all." *Chase Group Alliance LLC v. City of New York*, 620 (F.3d 146, 153 (2d Cir. 2010); *cf. Munafo v. Metropolitan Transp. Auth.*, 285 F.3d 201 (2002) ("[I]f the state affords a remedy for alleged violations of due process, the plaintiff may not complain about the sufficiency of a due process remedy by singling out one stage in the administrative proceedings and ignoring the rest of the array of procedures available to him.") (citation omitted).

Here, the cases that Plaintiff cites in support of its claim that New York law requires that charges against a firefighter must be heard by an impartial factfinder support the assertion that Article 78 provides an adequate remedy to address his claim that the adjudicators were biased. *See, e.g., Pawlowski v. Big Tree Volunteer Firemen's Co., Inc*., 12 A.D.3d 1030, 784 N.Y.S.2d 785 (4th Dept. 2004) (Article 78 proceeding seeking to annul fire company's determination on charges on due process grounds on the basis that the factfinder was not impartial and the determinations were not supported by substantial evidence); *Ferrara v. Magee Volunteer Fire Depart.,* 191 A.D.2d 967, 594 N.Y.S.2d 506 ( 4th Dept. 1993) (Article 78 proceeding in which the court concluded that firefighters due process rights were violated because two member of the board, who were the fact-finders, testified at the hearing.); *cf. 1616 Second Ave. Rest. v. New York State Liq. Auth*., 75 N.Y.2d 158 (1990), 551 N.Y.S.2d 461 (1990) (Article 78 proceeding in which the New York Court of Appeals annulled the determination of the State Liquor Authority

as the chairman made public comments about the specific dispute and therefore should have been disqualified on the ground of prejudgment); *Baker v. Poughkeepsie City School Dist.*, 73 A.D.3d 916, 900 N.Y.S.2d 466 (2d Dept. 2010) (Article 78 proceeding in which board of education determination adopting the findings and recommendations of a hearing officer was annulled as two members of the board testified at the disciplinary hearing and thus should have disqualified themselves from reviewing the recommendation of the hearing officer and acting on the charges.) *See also Richards v. Bd. of Fire Comm'rs of Brentwood Fire Dist.*, 117 A.D.3d 836, 985 N.Y.S.2d 718 (2d Dept. 2014); *Ferrara v. Magee Volunteer Fire Dept., Inc.*, 191 A.D.2d 967 (4th Dept. 1993). Even assuming that the nature of the "bias" alleged here required members of the Fire Council to be disqualified, Article 78 is an adequate vehicle to address that concern.

In addition, Plaintiff was provided a hearing *de novo* before Loughran and there is no claim that he was not impartial. Plaintiff was given notice of that hearing and was represented by counsel; the burden of proof was placed on the Fire Council to prove the charges and a transcript of the proceeding was maintained. As evidenced by that transcript, plaintiff was given the right to make an opening statement and the right to cross-examine the Fire Council's witnesses, as well as present witnesses and evidence of his own and submit a post-trial memorandum. *Cf. Concrete Pipe and Prods. Of Calif., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602 1993) ("Not all determinations affecting liability are adjudicative . . . . Where an initial determination is made by a party acting in an enforcement capacity, due process may be satisfied by providing for a neutral adjudicator to conduct a *de novo* review of all factual and legal issues.") (internal citations and quotation marks omitted); *Johnston v. Town of Orangetown*, 562 Fed. App'x 39, 40-41 (2014) (due process satisfied where plaintiff was afforded a pre-termination hearing at which he was represented by counsel and given the chance to put forth arguments and evidence

as to why he should not be terminated and had the opportunity to avail himself of the review process pursuant to Article 78.); *Munafo v. Metropolitan Transp. Auth.* 285 F.3d 201 (2d Cir. 2002). The panoply of procedures afforded plaintiff at the hearing before Loughran satisfies procedural due process.

Plaintiff's argument that there is no basis for such a de novo hearing is unavailing. *See Henry v. City of New York,* 638 Fed. App'x 113, 115 (2d Cir. 2016) (rejecting procedural due process claim based on allegation that defendants did not comply with prescribed procedures) As Defendants point out, there is nothing to preclude the Trustees from providing such a hearing. Additionally, "[a] breach of procedural requirements does not create a due process violation unless an individual was 'denied a fair forum for protecting his state rights.' Indeed, a contrary rule would bring within the scope of 1983 myriad claimed violations of local laws, this confusing the separate provinces of state and national laws that are central to our federal system." *McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir 1990) (citations omitted). "The fact that a state proceeding is required by due process does not mean that Section 1983 provides a remedy for every error committed in the state proceeding. So long as state appellate remedies are available, a Section 1983 action is not available for relief." *Chase Group Alliance*, 620 F.3d at 152-53.

Plaintiff argument that his procedural due process rights were violated by the deficiencies in the proceedings before the hearing officer and in Article 78 proceedings is similarly unconvincing. To the extent the proceeding before the hearing officer or the Article 78 proceeding before the Nassau County Supreme Court were not prompt, Plaintiff could have filed an Article 78 proceeding in the nature of mandamus. Additionally, in the context of a terminated public employee, the Second Circuit has repeatedly held that "[a]n Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes." *Wright v. City*

*of Syracuse*, 611 Fed. App'x 8, 12 (2d Cir. 2015) (quoting *Locuto*, 264 F.3d at 175); *accord Johnston,* 562 Fed. App'x at 41. That the standard of review in an Article 78 proceeding is whether there was substantial evidence to support the determination of termination is not problematic. Indeed, that is the standard used by federal courts to evaluate Social Security disability factual determinations of an administrative law judge. *See, e.g. Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir. 2004).

A plausible procedural due process claim has not been stated. According to the allegations in the Complaint, Plaintiff was provided with notice of the charges and an opportunity to be heard prior to termination and a full adversarial hearing afterwards, and Article 78 is available to review those prior proceedings. The motion to dismiss the procedural due process claim is granted.

## VI.      Substantive Due Process Generally

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2011). To state a claim for violation of this right, allegations must plausibly allege that the plaintiff "was deprived of a fundamental constitutional right," *Walker v. City of Waterbury*, 361 Fed. App'x 163, 165 (2d Cir. 2010) (citing *Local 342 v. Town Bd. of Huntington,* 31 F.3d 1191, 1196 (2d Cir. 1994)), by government conduct so egregious it  as " to shock the contemporary conscience," *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *accord Rochin v. California*, 342 U.S. 165, 172 (1952); *Ruston v. Town Bd. for Town of Skaneat*eles, 610 F.3d 55, 58 n.2 (2d Cir. 2010):  *see Autotech Collision, Inc. v. The Inc. Vill. of Rockville Center*, 673 Fed. App'x 71, 73 (2d Cir. 2016) ("To pursue a substantive due process claim, plaintiffs must show egregious, outrageous

government conduct injurious to an interest implicit in the concept of ordered liberty.") Conduct that is merely "incorrect or ill-advised" does not meet this standard. *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). The Supreme Court has "been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit." *Corbley v. County of Suffolk*, 45 F. Supp. 3d 276, 282 (E.D.N.Y. 2014) (citing *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)).

## VII. The Substantive Due Process Claim is Dismissed

Plaintiff's substantive due process claim is properly dismissed as abandoned, as he does not address defendant's arguments in support of dismissal. *See D.C. by Conley v. Copiague Union Free Sch. Dist.*, 2017 WL 3017189, at *10 (E.D.N.Y. July 17, 2017). Additionally, the conduct alleged does not meet the "shock the conscience" standard.

The motion to dismiss the substantive due process claim is granted.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the complaint is granted.

**SO ORDERED.**

Dated: Central Islip, New York
     August 28, 2018

    s/ Denis R. Hurley
    Denis R. Hurley
    United States District Judge